OLIVER MINING COMPANY v. MERRILL M. CLARK and Others.[1]

June 23, 1897.

Nos. 10,508—(183).

**Specific Performance—Subsequent Purchaser from Vendor.**

*Held,* that the complaint herein, as amended after a former decision in the action (65 Minn. 277), states facts sufficient to constitute a cause of action for specific performance of an executory contract for the conveyance of land, not only as against the contracting vendor, but also as against a third party to whom the land had been conveyed.

Appeal by plaintiff from an order of the district court for St. Louis county, Moer, J., sustaining defendants' demurrer to the amended complaint. Reversed.

*Billson, Congdon & Dickinson,* for appellant.

*Keyes & Baldwin,* for respondents.

COLLINS, J.

This action was brought to compel the specific performance of a contract to convey an undivided interest in 40 acres of land, evidently a very valuable mining property. It has been in this court before, on an appeal from an order striking out parts of the complaint (65 Minn. 277, 68 N. W. 23), the order being affirmed. Upon the cause being remanded, the plaintiff amended its complaint. The defendants interposed, and the court sustained, a general demurrer. From its order the present appeal has been taken.

[1] Reported in 71 N. W. 908.

The allegations of the original complaint are fully stated in the former opinion, and it is very evident that plaintiff has, by its amendments, made a great effort to foreclose all claim that the views of the court as heretofore expressed have been overlooked or disregarded.    It has earnestly endeavored to cure the defects in the original complaint, as pointed out by the court in its former opinion. We need not state all of the amendments.

There were several allegations added which seem to us to have materially aided those which were found in the original, and of these we call attention to those in which it is averred that when the time came for plaintiff to close the purchase, and it was insisting, as a condition to the payment of its money, that the judgments against Merritt should be paid, and Clark offered to pay all judgments ante-dating his deed from Merritt, but declined to pay such as were subsequently rendered, he falsely pretended that his deed was made in good faith, and therefore the subsequent judgments were not liens on the land; that plaintiff was then assured by Clark that  . Merritt would soon be able to pay off all of said judgments; that it was then and there ready, able, anxious, and willing to take a conveyance and pay for the land as soon as the incumbrances could be removed, and from that time down to the commencement of the action had repeatedly so informed the defendants, and had insisted upon a removal of all actual liens and incumbrances, and upon the completion of the contract; that at that time Merritt was of doubtful responsibility, and could not pay his debts, but that he then actually owned properties of large values, with which, upon a relaxation of the prevailing business stringency it might reasonably be expected he would be enabled to pay all of his debts, and, among other assets, held a claim of about a million and a half dollars against a person of undoubted financial ability to respond to the same, which was then in litigation; that there was a strong probability of his soon being able to pay and discharge all judgments against him, although there was not sufficient certainty of this to justify plaintiff in the exercise of reasonable prudence in accepting a deed; that it was believed by all parties that Merritt was not hopelessly involved, and that, in declining to accept a deed from Clark at the time, it was not understood by any of the parties to be plaintiff's positive and final refusal to take a conveyance or to

abandon its right under the contract, but, on the other hand, it was understood by all parties that plaintiff persisted in its effort, and would insist upon a conveyance as soon as the incumbrances could be removed; that Clark's conveyance to the exploration company was a fraud upon plaintiff, and the result of a conspiracy between the company and Clark, concocted and executed for the sole purpose of depriving the plaintiff of its right to insist upon the deed, and that such conveyance was entirely without consideration, and that a few weeks later, in June, 1895, Merritt recovered a verdict upon the claim in litigation, and against a perfectly responsible defendant, for nearly one million dollars; that by reason of this recovery, and because of a material improvement in Merritt's financial condition, on account of other properties which had greatly enhanced in value, the danger of judgment creditors molesting the land in question became so far reduced that plaintiff became willing to accept a deed, and to take the chances of loss on account of the judgments. And thereupon, in November, plaintiff tendered the purchase money, notes, mortgages, and securities as stipulated in the contract, and demanded a deed from the exploration company. There is another allegation to the effect that plaintiff, relying upon its contract with Clark, and because of such contract, had purchased and had acquired title to the undivided interests held and owned by other parties in and to this land, its interests thus acquired being $57/_{72}$ of the whole, while the balance, $15/_{72}$, was the interest held by defendants.

The exploration company, if the allegations be true, is in no better condition to resist a decree than Clark would be. The amendments show that a marked change and improvement took place in Merritt's financial condition soon after the time for performance matured; that this was then anticipated, although not so certain as to warrant plaintiff in accepting a doubtful title; and that there was no positive or irrevocable refusal to accept the title, or that any party had a right so to understand it. To the contrary, plaintiff had continuously insisted upon its purchase, and persistently acted in good faith. It is well to say at this time that these new allegations are not inconsistent with those found in the original complaint, but add to and enlarge upon what was therein stated.

In its order sustaining the demurrer the court below specially

referred to Johnson v. Fuller, 55 Minn. 269, 56 N. W. 813, and seems to have relied upon that case.    The difference between the cases— and it is very marked—is that in the Johnson case there was no express contract to make a good title to the vendee; here there was. There it was expressly agreed that the contract became void, without any right to damages in case the title proved defective; here there was no such agreement.   And there it stood conceded that the vendor acted in good faith throughout; here it was alleged that the vendor acted in bad faith from the beginning—first, in attempting to secure plaintiff's money while there were judgments docketed against Merritt, some of which were liens, beyond question, while all were actually so; and, second, in transferring the land to the exploration company in furtherance of a conspiracy with it to defraud the plaintiff.

We need not state the principles which should govern on the trial of this action, but are of the opinion that the amended complaint states a cause of action; and, if the material allegations therein contained can be established by competent evidence, specific performance should be decreed.

Order reversed.